UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUMBERTO ALVAREZ,

v.                                    Case No. 8:04-cr-335-T-17MSS
                                              8:07-cv-647-T-17MSS

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court upon Defendant Humberto Alvarez's motion to vacate, set aside, or  correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (D-CV -6; D-342). A review of the record demonstrates that, for the following reasons, Alvarez's motion to vacate must be denied.

Procedural History

In August 2004, a grand jury in the Middle District of Florida returned an indictment charging Humberto Alvarez with possessing with intent to distribute at least five kilograms of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. App. § 1903(a) and (g) and 21 U.S.C. § 960(b)(1)(B)(ii) (Count One), and

conspiracy to do the same, in violation of 46 U.S.C. app. § 1903(a), (g), and (j) and 21 U.S.C. § 960 (b)(1)(B)(ii) (Count Two). D-1.[1]

Alvarez pled guilty to Count Two pursuant to a written plea agreement. D-156 (plea agreement), 157, 175 (acceptance of plea), and 245 (transcript of guilty plea hearing). As part of his plea agreement, Alvarez expressly waived the right to appeal his sentence:

> [d]irectly or collaterally, on the ground that the sentencing guidelines are in any respect unconstitutional, on the grounds that any fact found by the Court for sentencing was not alleged in the indictment, was not admitted by the defendant, was not found by a jury, was not found beyond a reasonable doubt, or was found based upon evidence not admissible under the Federal Rules of Evidence, and on any other ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and USSG § 5C1.2, except in the following situations; (a) an upward departure by the sentencing judge; (b) a sentence above the statutory maximum: or (c) a sentence in violation of other law apart from the sentencing guidelines, provided, however, that if the government exercises its right to appeal the sentence imposed . . . .

D-156 at 12-13. During the change of plea hearing, the magistrate judge, through a sworn interpreter, reviewed at length with Alvarez his sentence (direct or collateral) appeal waiver and confirmed that he understood the consequences of that waiver, specifically:

> THE COURT: Now, you have also given up your right to appeal your case more generally. In a typical case, Mr. Alvarez, when a defendant goes to trial before a jury, and then if they are found guilty, are sentenced by a Court, that defendant has almost as a matter of right the ability to take an appeal to a higher court. In our case that appeal goes to the Eleventh Circuit Court of Appeals.
>
> In addition to the waiver we have already discussed, you are giving up your right to appeal your sentence except in three very limited circumstances. First, if the Government were to appeal your sentence, say they believe it was too low, the -- you would have the right to a -- file a cross appeal of your

---

[1]The criminal case will be referenced as "D" and the appropriate document number. The civil case will be references as "D-CV" and the appropriate document number.

sentence. But you could not challenge the constitutionality of the guidelines in filing that cross appeal.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If the Court imposed a sentence that exceeded the statutory or guideline maximum, you could file an appeal of that sentence claiming it to be higher than the guideline maximum, but in your case it would not be possible to sentence you above the statutory maximum, which is life.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And thirdly, if the Court were to impose some sort of illegal sentence, that was illegal in some way other than in the calculation of the guidelines, then you could have an appeal challenging the sentence as illegal.

Do you understand that?

THE DEFENDANT: Yes.

D-245 at 25-26.

The Court advised Alvarez of the charges he was pleading to, the rights he was waiving, the essential elements of the offenses and its penalties. *Id.* at 28-32, 34-35. During the entire exchange Alvarez stated: (1) he understood the charges and the penalties and had the entire agreement read to him in Spanish and understood it (*id.* at 8-9, 12); (2) he understood the consequences of giving up his rights in order to plea (*id.* at 28-32, 34-35); (3) he had discussed each aspect of the plea agreement and the sentencing guidelines with his counsel and understood them (*id.* at 9-12, 18-24); (4) he was not promised anything, except for what was in the plea agreement, or forced, coerced or threatened in any way in order to plea guilty (*id.* at 8, 26-28); and (5) he was satisfied with his counsel (*id.* at 7). The

3

Court also explained the benefits Alvarez could receive from signing the plea agreement -- dismissal of Count One (*id.* at 12); acceptance of responsibility (*id.* at 13-14); recommendation for low end of guidelines (*id.* at 14); safety valve (*id.* at 15); and substantial assistance (*id.* at 17-18).

> The Court accepted Alvarez's guilty plea:
>
> THE COURT: Based upon the Court's consideration of the defendant's demeanor, his answers to my questions, my consideration of the factual statements and the defendant's acceptance of the truth of those facts, I find that Mr. Alvarez is competent, that his plea is knowing and voluntary, and that it is adequately supported by an independent basis in fact as to each of the essential elements of the offense to which he has pled.
>
> As a result, I will recommend that your guilty plea be accepted. I will do that today. You will have ten days to object to the report and recommendation. If you fail to object, in all likelihood the District Judge will accept your plea, find you guilty and sentence you based upon that finding.

*Id.* at 36. Alvarez did not file an objection to that report, which this Court adopted. D- 175.

This Court sentenced him to 135 months' imprisonment, to be followed by 36 months' supervised release. D-210, 218 (judgment), 261 (transcript of sentencing hearing). Alvarez directly appealed the conviction and sentence (D-223) raising the following issues pursuant to *Anders v. California*, 386 U.S. 738 (1967):

> Whether the United States' assertion of jurisdiction over a stateless vessel in international waters violated the due process clause of the Fifth Amendment and required the government to prove a nexus between the criminal conduct and the United States in a prosecution for violating the Maritime Drug Law Enforcement Act (hereinafter "MDLEA")?[2]
>
> Whether the defendant has made a substantial step demonstrating intent to conspire to possess and distribute cocaine within the United States.

---

2 The Government submitted a copy of Alvarez's initial brief as Attachment A to the response.

Alvarez's initial brief at 2. The Eleventh Circuit affirmed the conviction and sentence. *United States v. Alvarez,* No. 05-12689, 167 Fed. Appx. 118 (11th Cir. Feb.13, 2006); D-322.

Alvarez has now filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel prior to the entry of his guilty plea, at sentencing, and on direct appeal. D-CV-6 at 6-9.

FACTS

In July 2004, a United States Coast Guard helicopter spotted a 40-foot "go-fast" boat in the western Caribbean Sea. Presentence Report (hereinafter "PSR") ¶ 10. Coast Guard personnel observed eight people on board as well as bales and 55-gallon fuel drums. *Id.* Upon sighting the helicopter, the crew of the "go-fast" boat jettisoned about thirty bales as well as items of clothing. *Id.* Coast Guard personnel recovered sixteen of the jettisoned bales, each of which contained twenty kilograms of cocaine (for a total of 320 kilograms of cocaine). *Id.* at ¶ 12. Alvarez and the other crewmen of the "go-fast" boat were detained, leading to arrest. *Id.* at ¶¶ 11, 13.

The probation office recommended that this Court not adjust Alvarez's guidelines offense level for any relative role in the offense. *Id.* at ¶ 21. The PSR did not contain any information regarding the relative role of the eight persons involved in Alvarez's offense. *See id.*

In the Addendum to the PSR, Alvarez sought a *DeVaron*[3] exception as to his role in the offense. PSR Addendum at 1; D-261 at 4. Probation held Alvarez responsible for the same amount of drugs as his co-defendants and that his role in the offense "was not readily

_____

3 Alvarez refers to *United States v. DeVaron*, 175 F.3d 930 (11th Cir. 1999).

5

Case 8:04-cr-00335-EAK-EAJ   Document 361   Filed 03/04/08   Page 6 of 20 PageID 577

distinguishable" from the others because "there is no clear path to the conclusion that [Alvarez] is *substantially less culpable than (the) average participant*" and did not qualify for a mitigating role adjustment under USSG § 3B1.2. PSR Addendum at 2 (emphasis in original). At sentencing, he made no further objections other than the *DeVaron* role argument. See D-261. Alvarez objected to Probation's recommendation that he receive no adjustment for role pursuant to USSG § 3B1.2, stating:

> Your Honor, it's pretty much the argument made by counsel before the Court a few moments ago. Judge, it's always been my theory that these individuals as a whole are minor in terms of the individuals responsible for organizing these trips. I've come to learn a lot about how these trips are organized. Captains are to be paid, captains are to be chosen, and guards are chosen. Each one having their own role. In some instances there's cooks, mechanics. And so in this case Mr. Alvarez is simply or was simply a member of the crew whose job was simply to embark on this journey, make its way to its final destination.
>
> My argument is that because he is a small little cog in this big wheel, I would ask the Court to take it into consideration to adjust the role in the offense accordingly, Your Honor.

*Id.* at 5. This Court overruled Alvarez's objection, finding his role "similarly situated " with the rest of the crew members. *Id.* at 6. This Court determined Alvarez eligible for the safety valve. *Id.* at 7. After calculating Alvarez's sentencing range to be 135 to 168 months' imprisonment,  this Court invited the parties to speak in mitigation of the sentence which this Court indicated would be at the low end of the guidelines range. *Id.*at 9-10. Alvarez's counsel expressed remorse on Alvarez's behalf and relayed a claim for "mercy" from his wife. *Id.* at 10-11. Alvarez also spoke of his remorse, asking this Court to consider his economic motivation in participating in the crime was to benefit his family and asking for a "fair" sentence. *Id.* at 11-12. This Court took these arguments into account and counseled Alvarez to use the 135 months' imprisonment to improve his education so upon release,

6

he would be able to make a "better living" and "not fall back into the same poverty." *Id.* at 15-17.

Alvarez then timely filed the present motion to vacate.

Discussion

Alvarez raises under Grounds One through Four claims that his counsel provided ineffective assistance. Those claims are cognizable under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings).

Ground Four

However, Alvarez argues in his motion under Ground Four that his attorney was ineffective in that he failed to object to the "misapplication of the safety valve," Ground Four. D-cv-6 at 9. This claim is not cognizable on collateral relief grounds for the reasons discussed below.

Most of the courts of appeals have held that "[b]arring extraordinary circumstances," claims of non-constitutional error in the application of the Sentencing Guidelines cannot be raised in a Section 2255 motion. *United States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999); *see Buggs v. United States*, 153 F.3d 439, 443 (7th Cir. 1998); *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996); *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (*per curiam*); *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996); *Auman v. United States*, 67 F.3d 157, 160-61 (8th Cir. 1995); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994); *Knight v. United States*, 37 F.3d 769, 773 (1st Cir. 1994). *But cf. United States v. Talk*, 158 F.3d 1064, 1069 (10th Cir. 1998) (assuming without deciding that claim

of nine-level Guideline error that would reduce 108-month sentence by more than fifty months is cognizable).

Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. *See Lynn*, 365 F.3d at 1232; *Burke*, 152 F.3d at 1331-32 (citing *Sunal v. Large,* 332 U.S. 174, 178 (1947)). Nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). An allegation that a given sentence is contrary to the sentencing guidelines is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice. *See Burke*, 152 F.3d at 1331-32 (collecting cases); *see also United States v. Diaz-Clark*, 292 F.3d 1310, 1316 n.4 (11th Cir. 2002) (expressing doubt whether claim concerning sentencing guidelines misapplication would be cognizable even if not successive).

Alvarez's argument concerning a misapplication of the sentencing guidelines is not cognizable in a section 2255 proceeding. Alvarez's argument is further contradicted by the record which shows that he did receive the benefit of the safety valve. D-261 at 7-8. Therefore, ground four does not warrant relief.

PRIOR RESOLUTION

Alvarez argues that his counsel was ineffective for failing to raise a jurisdictional argument concerning his arrest. D-cv-6 at 6. Alvarez is not entitled to review of this claim, however, because the Eleventh Circuit already has decided it. "[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral

8

attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal). On direct appeal, Alvarez has already argued that his arrest as a Columbian national aboard a stateless vessel in international waters carrying cocaine falls under the jurisdiction of the Maritime Drug Law Enforcement Act (hereinafter "MDLEA"). Attachment A, Alvarez's brief at *6. The Eleventh Circuit reviewed the record in Alvarez's appeal and granted counsel's motion to withdraw and affirmed Alvarez's conviction and sentence pursuant to Anders. D-322.

Prior resolution bars reconsideration of the Alvarez's claim that counsel was ineffective for failing to "consider the rampant jurisdictional issue inherent in an arrest in international waters" because it is clear that the Eleventh Circuit considered the claim concerning the application of MDLEA to Alvarez. D-cv-6 at 6. Moreover, Alvarez's claim that it was counsel's "duty to at least explore such basic initial issues a[s] the Court's jurisdiction" is not correct as it is plain that counsel did raise a jurisdictional argument in the *Anders* brief and, as discussed above, and the Eleventh Circuit resolved the issue against him on February 13, 2006, in *United States v. Alvarez*, Appeal No. 05-12689, 167 Fed. Appx. 118 (11th Cir. 2006). Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a Section 2255 proceeding. *Davis v. United States*, 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

Alvarez has established no extraordinary circumstance that would justify reconsideration of this claim. *See Schlup v. Delo*, 513 U.S. 298 (1995); *Davis v. United States*, 417 U.S. 333 (1974). Therefore, Alvarez's claim is procedurally barred.

WAIVER

Alvarez has waived the right to appeal his sentence, directly or collaterally, on the grounds he raises in this motion.

The right to appeal is statutory and can be waived knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.), *cert. denied*, 126 S. Ct. 246 (2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). For this Court to enforce an appeal waiver contained in a plea agreement, the United States need only demonstrate either that this Court specifically questioned the defendant concerning the sentence appeal waiver during the Fed. R. Crim. P. 11 colloquy or that it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. *Williams*, 396 F.3d at 1342; *Bushert*, 997 F.2d at 1351.

A defendant's waiver of the right to appeal "directly or collaterally" encompasses his right to challenge his sentence in a section 2255 proceeding. *See Williams*, 396 F.3d at 1342; *United States v. White*, 307 F.3d 336, 341-44 (5th Cir. 2002); *Garcia-Santos v. United States,* 273 F.3d 506, 508-09 (2d Cir. 2001); *Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *United States v. Cockerham*, 237 F.3d 1179, 1183-87 (10th Cir. 2001); *Mason v. United States*, 211 F.3d 1065, 1069-70 (7th Cir. 2000). The waiver is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance,

10

thus rendering the waiver meaningless." *Williams*, 396 F.3d at 1342; *see also Cockerham*, 237 F.3d at 1182 (appeal and collateral attack waiver provision in plea agreement waives the right to section 2255 petition based on ineffective assistance of counsel unless challenge concerns the validity of the plea or waiver); *Mason*, 211 F.3d at 1069 (same). In particular, if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim also was waived. *See Williams*, 396 F.3d at 1342 (acknowledging that exceptions in plea agreement to defendant's waiver of appeal did not apply to the claims raised in the petition); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (although "dress[ed] up" as a Sixth Amendment claim, defendant really is challenging the correctness of his sentence under the guidelines and, therefore, is barred by the plain language of his plea agreement; to allow his claim would be to "render[ ] meaningless" such plea agreement waivers).

In this case, this Court specifically questioned Alvarez about his appeal waiver during the Fed. R. Crim. P. 11 colloquy, and it is clear from the record that Alvarez understood the full significance of the waiver. D-245 at 25-26. In his motion, Alvarez argues that his counsel was ineffective for failing to communicate effectively to him in Spanish or provide an interpreter, Ground One; failing to raise a jurisdictional issue concerning his arrest, Ground Two; failing provide a copy of the indictment, explain the elements of the offense, contact the Columbian embassy, request an evidentiary hearing, assist in the process or review the PSR with Alvarez, request a minimum mandatory sentence, or "investigate or pursue" Alvarez's claims, Ground Three; or by failing "to object to misapplication of the safety valve," Ground Four. D-cv-6 at 5-9. While these claims are couched in terms of ineffective assistance of counsel, Alvarez has waived them because

they address his sentence and the manner in which it was determined, not the validity of his plea or the waiver. *See Williams*, 396 F.3d at 1342; *Davila*, 258 F.3d at 451-52; *Mason*, 211 F.3d at 1068; *Djelevic,* 161 F.3d at 107. Because these claims are not based on "an upward departure . . . , a sentence above the statutory maximum, a sentence in violation of the law apart from the sentencing guidelines, or the applicability of the "safety valve" provisions[,]" D-156 at 12-13, this Court will not consider them.

For this Court to entertain Alvarez's section 2255 motion would permit Alvarez to proceed in contravention of the plain meaning of his plea agreement and deny the Government the benefit for which it bargained. *See United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

MERITS

Furthermore, on the merits, Alvarez is not entitled to relief.  Alvarez argues that his counsel was ineffective for failing to communicate effectively to him in Spanish or provide an interpreter, Ground One; failing to raise a jurisdictional issue concerning his arrest, Ground Two; failing provide a copy of the indictment, explain the elements of the offense, contact the Columbian Embassy, request an evidentiary hearing, assist in the process or review the PSR with Alvarez, request a minimum mandatory sentence, or "investigate or pursue" Alvarez's claims, Ground Three; or by failing "to object to misapplication of the safety valve," Ground Four. D-cv-6 at 5-9. These claims are without merit.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied

12

on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the

alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

 As discussed above, Alvarez's assertion that he received ineffective assistance of counsel prior to the entry of his guilty plea, at sentencing, and on direct appeal is a thinly disguised attack on the length of his sentence. Because Alvarez has not established a constitutional violation for the perceived errors, his claims are unavailing.

## A. Ground One--Failing to communicate effectively to Alvarez in Spanish or provide an interpreter.

Alvarez alleges that his counsel's communications with him were affected because counsel spoke "conversational" Spanish and Alvarez spoke "idiomatic speech." D-cv-6 at 5. Alvarez also alleges he was not provided with an interpreter. *Id.* Alvarez's assertions are incorrect or unavailing.

Alvarez had the services of a sworn interpreter during his plea and sentencing proceedings. See D-245 at 3-4; D-261 at 2. At Alvarez's arraignment, the charges in the indictment were read to him and the elements of the offense were explained to him at his change of plea hearing. See D-47; 52; 245 at 12, 31-35. This Court ensured that the plea agreement had been read to Alvarez in Spanish and the PSR and PSR Addendum were reviewed with him by his attorney, D-245 at 8; D-261 at 3-4; determined that Alvarez was both educated and competent, D-245 at 6; and determined that his counsel had explained to him the plea agreement terms, including the sentencing guidelines sentence, the safety valve, and his appeal waiver, D-245 at 8-9, 14-15, 25-26. Moreover, there is no indication on the record that Alvarez raised a concern with this Court concerning the adequacy of

counsel's representation or to the sufficiency of the interpreter provided for the proceedings.

These precautions were sufficient to ensure that Alvarez had knowingly and voluntarily agreed to plead guilty in this case and understood the consequences of doing so. Under 28 U.S.C. § 1827(d)(1), a non-English speaking defendant is entitled to a court-appointed interpreter to help comprehend the proceedings and communicate with counsel. The requirements of the statute are met when an interpreter is provided to "continuously interpret the proceedings." *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980). By affirmatively responding to this Court's inquiries during the plea and sentencing process and by failing to complain about his ability to communicate with counsel or the quality of the translation services provided, Alvarez's claims are not credible. The record clearly demonstrates that Alvarez understood the proceedings, communicated with his counsel without impairment, and an interpreter did assist during the proceedings rendering this claim without merit. *See United States v. Lim*, 794 F.2d 469, 471-72 (9th Cir. 1986). Consequently, Alvarez fails to show prejudice under Strickland and this claim has no merit.

**B. *Ground Two--Failing to raise a jurisdictional issue concerning his arrest.***

As to Alvarez's jurisdictional claims, his counsel did not perform deficiently by failing to litigate that the Government or this Court did not have jurisdiction over the vessel he was in, because this claim lacks merit. Counsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit. *See Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986).

Moreover, as discussed previously, on direct appeal, Alvarez did challenge the jurisdiction of MDLEA, and that issue has been resolved against him. The law in this circuit regarding jurisdictional and constitutional challenges to the Maritime Drug Law Enforcement Act (MDLEA) has already been resolved and is governed by *United States v. Tinoco*, 304 F.3d 1088, 1096-1102 (11th Cir. 2002). *See also United States v. Rendon,* 354 F.3d 1320, 1326-28 (11th Cir. 2003); *United States v. Estupinan*, 453 F.3d 1336 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 1486 (2007).

The record clearly shows that Alvarez's counsel met his obligations as applied to the plea and appellate process and Alvarez has failed to show any deficient performance in this ground or any resulting prejudice. Thus, Alvarez's claim under Ground Two fails to meet the Strickland standard and has no merit.

C. ***Ground Three–Failing provide a copy of the indictment, explain the elements of the offense, contact the Columbian embassy, request an evidentiary hearing, assist in the process or review the PSR with Alvarez, request a minimum mandatory sentence, or "investigate or pursue" Alvarez's claims .***

Alvarez argues in his motion that his attorney was ineffective for failing to provide him with a copy of the indictment or explain the elements of the charges, request an evidentiary hearing, review the PSR with Alvarez or assist him in the process, request a minimum mandatory sentence, or investigate or pursue Alvarez's "claims." D-cv-6 at 7- 8. Alvarez's assertions are incorrect or unavailing.

At Alvarez's arraignment, the charges in the indictment were read to him and the elements of the offense were explained to him at his change of plea hearing. See D-47; 52; 245 at 12, 31-35. Alvarez fails to explain if he ever requested a copy of the indictment from

his counsel or this Court. Moreover, there is no indication on the record that Alvarez raised a concern with this Court concerning any of the charges in the Indictment or the elements of the offense. Lastly, even if the Court were to believe that counsel did not discuss the elements with Alvarez, the Court must conclude that Alvarez read them when reviewing the translated proposed plea agreement and when the Court reviewed the charges with him at his change of plea hearing, he agreed to the factual basis as proffered by the government, including that the vessel he was in was subject to the jurisdiction of the United States, and agreed that with those facts the government would have enough evidence to prove the elements of the offense. D-245 at 12, 29, 31- 35. Alvarez fails to further develop this claim with a resulting prejudice under *Strickland.*

The other allegations contained in Ground Three -- contacting the Columbian Embassy, requesting an evidentiary hearing, reviewing the PSR with Alvarez or assisting him in the process, requesting a minimum mandatory sentence, or investigating or pursuing Alvarez's "claims," are mere conclusory statements without support or elaboration that his counsel was ineffective because he "present[ed] an *Anders* brief and motion to withdraw." D-cv-6 at 8. Again, even if construed liberally, the claims fail as unavailing or incorrect.

Article 36 of the Vienna Convention on Consular Relations requires that local authorities inform detained or arrested foreigners of the right to contact their consulate for assistance. *See United States v. Duarte-Acero*, 296 F.3d 1277, 1281 (11th Cir.2002). Here, Alvarez does not specify whose failure he is referring to in contacting the Columbian Embassy but irregardless, the contact with the Embassy would by Alvarez. Here, he does not allege that he asked counsel to contact the Embassy and counsel failed to do so. Nor

17

does he explain why he did not invoke his right to contact the Embassy himself. By not demonstrating prejudice,  Alvarez fails to meet the *Strickland* standard.

Counsel did object to the PSR and renewed his role objection at sentencing, . See PSR Addendum; D-261 at 4-5. Probation interviewed Alvarez for the PSR and determined he qualified for safety valve adjustment after the objections to the PSR were filed and Alvarez was sentenced at the low end of the applicable guidelines. D-218 at 2; D-261 at 7-9.

Alvarez does not develop his claims regarding an evidentiary hearing, how else counsel could have assisted in the PSR process or how an evidentiary hearing or investigation of his claims would have affected his sentence. Without more, these claims fail to establishing a constitutional violation and are unavailing.

Alvarez fails in Ground Three to provide any details, facts or legal basis for these claims. His assertions constitute nothing more than broad conclusory allegations and are insufficient to establish ineffective performance and/or resulting prejudice. Claims not fairly raised will not be entertained on collateral attack. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially). While a pro se litigant may be entitled to liberal construction of his arguments, issues mentioned only superficially will not be treated as properly raised. *Walker*, 860 F.2d at 1011. Likewise, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Alvarez has failed to show any deficient performance in any of the claims raised in Ground Three or any resulting prejudice under *Strickland.*

**D. Ground Four–Failing "to object to misapplication of the safety valve."**

18

Alvarez argues in his motion of his motion that his attorney was ineffective for failing to object to the "misapplication of the safety valve," Ground Four. D-cv-6 at 9. As to his safety valve objection claim, Alvarez is incorrect. Alvarez did receive the benefit of the safety valve. D-261 at 7-8. Because Alvarez has already received the safety valve application to his low-end sentence, this claim lacks merit.

Throughout his motion to vacate, Alvarez has failed to show any deficient performance by his counsel or any resulting prejudice. As a result, he is not entitled to any relief.

Accordingly, the Court orders:

That Alvarez's motion to vacate D-CV -6; D-342 is denied.  The Clerk is directed to enter judgment against Alvarez in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 4, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA:  Joseph K. Ruddy
Pro se:  Humberto Alvarez